IN THE

TENTH COURT OF
APPEALS

 




 
 
 
 
 
 
 


 

 



No. 10-05-00186-CV

 

In re GMAC Commercial finance, l.l.c.

 

 



Original
Proceeding

 

 



MEMORANDUM 
Opinion



 

          The petition for writ of mandamus is
denied.

 

 

 

                                                                   BILL
VANCE

                                                                   Justice

 

Before
Chief Justice Gray,

          Justice Vance, and

          Justice Reyna

Petition
denied

Opinion
delivered and filed April 27, 2005

[OT06]






here." Myers further testified that Keith also got out as he was writing
down the license number and said, "Here's the damn number, if you want it." According to
Myers, he hollered back, "Yeah, I've already got it," and drove off. He stopped, however, and
followed them to see whether "they was going to go somewheres else where he shouldn't be."
      Myers also testified that Byron stopped in the middle of the dam and again got out of the
vehicle. According to Myers, when he got out, Byron said, "You don't own this dam road." 
Myers attempted to explain that they were on private property and said that he was going to call
the police. He testified that they continued to approach his car, threatening him until he got back
in his car and started backing up. According to Myers, he then drove toward two lots he owned
beside the dam, walked onto the lots and said, "This is my lots and it's private property." He
claimed that when they "started backing up" on his lots, he got back in his car and drove toward
his house. On rebuttal, Clay testified that after the initial confrontation with Myers, neither his
father nor Keith got out of the vehicle or spoke with Myers again. Keith also testified that after
they offered Myers his license plate number they never got out or talked with Myers again.
      According to Myers, he parked his car in front of the gate, leaving room for other cars to pass
by on the road. Myers remembered entering his house, getting his shotgun, loading it, and
returning to the gate as Byron approached, but he said that he could not remember firing it. All
he remembered was getting in his car and taking off. Myers went to Cecelia Glenn's house and
told her, "I shot a guy. I don't know if I hurt him or what, but let's go call the police." After
looking for the police they returned home and could see red lights flashing at Clay's aunt's house. 
He walked up to a highway patrolman and asked, "Is the guy hurt?" Myers testified that the
officer said, "You killed him," and arrested him immediately.
      On cross-examination, the prosecutor elicited the following testimony from Myers:
Q. Okay. All of this stuff that you have told about, what went on an what happened
and any threats, if there were any, any lapse of memory; this is the first time you've told
it, conveniently; haven't you?
 
A. What are you saying, now?
 
Q. This is the first time you have told it; you haven't told anybody else?
 
[Defense Attorney]: I object to any comments on Mr. Myers exercising his right to
be silent. I would ask the question be stricken.
 
THE COURT: I'm not sure; I'm not following you. Restate your question, Mr.
Batchelor.
 
[Prosecutor]: Your Honor, I'm asking if he's ever said this to any other person.
 
THE COURT: Restate your question again.
 
Q. Have you ever told any other person, before today, what you told in here?
 
A. I sure have.
 
Q. Who?
 
A. My family.

Myers' attorney never obtained a ruling on his objection and Myers provided a favorable answer
by testifying that he had previously told his family about the threats. Because Myers did not press
the objection to the point of an adverse ruling, nothing is preserved for review.


 Furthermore,
neither the prosecutor's question, defense counsel's objection, nor Myers' answer made any
reference to his post-arrest silence.



      It is a general rule of evidence that the prior silence of a witness as to a fact to which he has
testified, where such silence occurred under circumstances to which he would be expected to speak
out, may be used to impeach the witness during cross-examination.


 Both Glenn and Myers
testified that he told her about the shooting. According to Glenn, however, he did not tell her how
it happened. Because he was not yet under arrest, and he could be expected to speak out regarding
the threats that he later claimed as justification for the shooting, his silence regarding the threats
may be used as evidence of prior inconsistent conduct.


 Accordingly, we overrule Myers' single
point of error.
      We affirm the conviction.
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed May 18, 1994
Do not publish